(87 App. Div. 302.)

### BELLE OF BOURBON CO. v. LEFFLER et al.

(Supreme Court, Appellate Division, First Department.  November 6, 1903.)

1. SALES—BREACH OF CONTRACT—MANUFACTURED GOODS—MEASURE OF DAMAGES.
  Where, in an action for damages for the breach of a contract to purchase whisky, the goods were manufactured at the time of defendant's breach of contract, and plaintiff retained the goods without selling them for defendant's account, the measure of damages was the difference between the market value of the manufactured goods, if they have a market value, and the contract price.

2. SAME.
  Plaintiff was not entitled to recover the difference between the cost of manufacture and the contract price, in the absence of proof that the goods did not have a market value.

  84 N.Y.S.—25

Appeal from Trial Term, New York County.

Action by the Belle of Bourbon Company against John Leffler and others, trading under the name of John Leffler & Co. From an order setting aside a verdict in favor of plaintiff and granting defendants a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

George A. Stearns, for appellant.

S. K. Lichtenstein, for respondents.

LAUGHLIN, J. The action is brought to recover damages for a breach of contract. On the 14th day of February, 1894, the plaintiff, a Kentucky corporation, and the defendants as copartners, entered into a contract in writing by which the plaintiff gave to the defendants the exclusive agency to sell the plaintiff's goods, known as "Belle of Bourbon whisky," in the city of New York and other specified territory for the period of five years from that date, and the defendants accepted the agency. It was stipulated in the contract, among other things, that the whisky should be delivered to the defendants in the city of New York at $8 per case, free of freight, on four months' credit; that the plaintiff was to sell and the defendants to purchase at least 1,200 cases per annum, and, at the option of the defendants, a larger quantity, but that the defendants should have an additional year for the purchase of the full 6,000 cases; that, if the plaintiff should sell whisky in the territory covered by the contract, it should pay the price thereof over $8 per case to the defendants, and that no goods should be sold in the territory for less than $9 per case free of freight. The action was commenced on the 31st day of August, 1900, more than six years after the making of the contract. The plaintiff alleges that the defendants had ordered, received, and paid for 2,533 cases of whisky under the contract, leaving 3,467 cases undelivered and uncalled for, "which number of cases of merchandise the plaintiff above named has offered and tendered, and is now ready, and always has been ready and willing, to deliver according to the terms of said contract." It is further alleged in the complaint that the plaintiff has at various times demanded that the defendants receive and accept the goods, but that the defendants have refused, and still refuse, to receive the same, or any part thereof, whereby the plaintiff has been damaged in the sum of $5,200.50, or $1.50 per case. The allegations of the complaint with reference to the tender of the balance of the goods, the defendants' refusal to take the same, and the amount thereof stand admitted, as they are not denied in the answer.

Plaintiff blends, but does not distill, whiskies. It was not shown, otherwise than by these allegations of the complaint, whether these whiskies were blended and prepared and shipped and tendered to the defendants, or whether the defendants repudiated the contract, in consequence of which the plaintiff elected to hold them for its damages without manufacturing or tendering the goods. The plaintiff proved the cost of manufacture, and sought a recovery for the difference between the cost of manufacture and the contract price; and the case was submitted to the jury upon the theory that that was the proper

rule of damages. The court set aside the verdict and granted a new trial upon the ground that the measure of damages is the difference between the market value and contract price, and the plaintiff appeals.

The question hinges upon whether the breach of contract consisted in the failure to accept manufactured goods or in a repudiation of the contract, which relieved the manufacturer from manufacturing and tendering a delivery. Where the purchaser of goods to be manufactured repudiates the contract in advance of the manufacture of the goods, or is guilty of a breach of contract which justifies the vendor in suspending the further manufacture of the goods, and he does so, then the measure of damages is the difference between the cost of manufacture and the contract price. Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; Roehm v. Horst, 178 U. S. 21, 20 Sup. Ct. 780, 44 L. Ed. 953; Todd v. Gamble, 148 N. Y. 382, 390, 42 N. E. 982, 52 L. R. A. 225; Kelso v. Marshall, 24 App. Div. 128, 48 N. Y. Supp. 728. In such case the market value is immaterial, for the market may change before the goods could be manufactured. Neither is the vendor required to invest his time or capital and run the risk of a fall in the market price below the cost of manufacture, and, if he did, this would not be binding on the purchaser. Where, however, the goods are manufactured, and the vendor tenders delivery, which is refused, and then sues, not for the contract price, but for damages, retaining the goods without selling the same for the account of the purchaser, the measure of damages is the difference between the market value of the manufactured goods, if they have a market value, and the contract price; and if they have no market value he may recover the difference between the cost of manufacture and the contract price. But it is incumbent upon him to show whether or not the goods have a market value, inasmuch as he is only entitled to recover his loss, which, if there be a market value, will be measured by the difference between such market value and the purchase price if the market value be lower than the purchase price. Moore v. Potter, 155 N. Y. 481, 486, 50 N. E. 271, 63 Am. St. Rep. 692; Ackerman v. Rubens, 167 N. Y. 405, 60 N. E. 750, 53 L. R. A. 867, 82 Am. St. Rep. 728; Todd v. Gamble, supra; Kelso v. Marshall, supra. In the case at bar the only evidence as to whether the goods were manufactured is the allegation of the complaint, and we think the fair inference arising thereon is that they were manufactured at the time of the breach, for it is difficult to perceive how otherwise a tender of delivery could have been made. The inference arising on these allegations, in the absence of any allegation as to what has been done with the goods, is that the plaintiff has elected to retain the goods, and sue for its damages. Gray v. Central R. Co. of New Jersey, 82 Hun, 523, 31 N. Y. Supp. 704. He cannot, after manufacturing and tendering the goods, recover his full damages and retain the goods, if they have a market value, without giving the purchaser credit therefor.

We therefore agree with the learned trial justice that he applied an erroneous rule of damages in this case, and the order granting a new trial should be affirmed, with costs to the respondent. All concur.